**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLA RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-5240 |
| | ) | |
| COOK COUNTY, ILLINOIS, a municipal | ) | |
| corporation within the State of Illinois, | ) | |
| OFFICE OF THE CHIEF JUDGE OF THE | ) | |
| CIRCUIT COURT OF COOK COUNTY, | ) | |
| ILLINOIS, directing the personnel of the | ) | |
| COOK COUNTY ADULT PROBATION | ) | Honorable Manish S. Shah, |
| DEPARTMENT, LAVONE HAYWOOD, | ) | Judge Presiding. |
| individually and in his official capacity as Chief | ) | |
| Probation Officer, MATTHEW SOBIESKI, | ) | |
| individually and in his official capacity as Assistant | ) | Honorable Sidney I. Schenkier |
| Chief Probation Officer,  PHIL LOIZON, | ) | Magistrate Judge. |
| individually and in his official capacity as Deputy | ) | |
| Chief Probation Officer, and MARY KENNEDY, | ) | |
| individually and in her official capacity as | ) | |
| Intensive Drug Supervisor, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

**SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiff, CARLA RODGERS, by and through her

attorneys, John P. DeRose and Caitlyn F. DeRose of John P. DeRose & Associates,

and as and for her Second Amended Complaint against Defendants COOK

COUNTY, ILLINOIS, a municipal corporation within the State of Illinois, THE

OFFICE OF THE CHIEF JUDGE OF THE  CIRCUIT COURT OF COOK

COUNTY, ILLINOIS, as the employer directing all the employees of the COOK

1

COUNTY ADULT PROBATION DEPARTMENT, LAVONE HAYWOOD, individually and in his official capacity as Chief Probation Officer, MATTHEW SOBIESKI, individually and in his official capacity as Assistant Chief Probation Officer, PHIL LOIZON, individually and in his official capacity as Deputy Chief Probation Officer, and MARY KENNEDY, individually and in her official capacity as Intensive Drug Supervisor, states as follows:

## INTRODUCTION

1.      42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

2.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended, and State Law Claims of hostile and retaliatory treatment in the workplace, and Intentional Infliction of Emotional Distress claims.

### JURISDICTION AND VENUE

3.      This action is brought pursuant to 29 U.S.C. § 794; and the jurisdiction of this court is invoked pursuant to 29 U.S.C. § 794(a)(1).  Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

4.      Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this judicial district and plaintiff and defendants reside in this District and the events giving rise to the claims asserted herein occurred within this judicial district.

5.      Pursuant to 28 U.S.C. § 1367, Plaintiff requests this Honorable Court to exercise supplemental jurisdiction over her state law hostile work environment and retaliatory treatment and intentional infliction of emotional distress which turn on an identical set of facts as her § 1983 claims, the same evidence will be used to prove all claims, and the same questions of fact are involved with all claims.

## PARTIES

6.      Plaintiff Carla Rodgers (hereinafter sometimes referred to as "Plaintiff", "Carla Rodgers", or "Ms. Rodgers") is, at all relevant times hereinafter mentioned, a resident of the City of Chicago in the County of Cook, and a citizen of the State of Illinois and of the United States of America.

7.      Defendant Cook County, at all relevant times hereinafter mentioned, is a municipal corporation within the State of Illinois which oversees the Cook County Adult Probation Department and Plaintiff's employer, exercising significant control over her hiring and firing, exercising significant control over the conditions of her employment, directing all employees of the Cook County Adult Probation Department, and acting under the color of law.

8.      The Office of the Chief Judge of the Circuit Court of Cook County, Illinois, at all relevant times hereinafter mentioned, was Plaintiff's employer, exercising significant control over her hiring and firing, exercising significant control over the conditions of her employment, directing all employees of the Cook County Adult Probation Department, and acting under the color of law.

9.      Defendant Lavone Haywood, at all relevant times hereinafter mentioned, was Chief Probation Officer of the Cook County Adult Probation

Department, supervising the employees of the Cook County Adult Probation Department, exercising significant control over the conditions of Plaintiff's employment, and acting under the color of law.

10.    Defendant Matthew Sobieski, at all relevant times hereinafter mentioned, was Assistant Chief Probation Officer of the Cook County Adult Probation Department, supervising the employees of the Cook County Adult Probation Department, exercising significant control over the conditions of Plaintiff's employment, and acting under the color of law.

11.    Defendant Phil Loizon (hereinafter sometimes referred to as "Deputy Chief Loizon " or "Phil Loizon"), at all relevant times hereinafter mentioned, was Deputy Chief Probation Officer of the Cook County Adult Probation Department, supervising the employees of the Cook County Adult Probation Department, exercising significant control over the conditions of Plaintiff's employment, and acting under the color of law.

12.    Defendant Mary Kennedy, at all relevant times hereinafter mentioned was an Intensive Drug Supervisor of the Cook County Adult Probation Department, supervising the employees of the Cook County Adult Probation Department, exercising significant control over the conditions of Plaintiff's employment, and acting under the color of law.

## FACTS

### A. Ms. Rodgers Highly Regarded as a Probation Officer

13.     Plaintiff, Carla Rodgers was hired as a Cook County Adult Probation Officer in August 1997.

14.     Over the years of her employment, Ms. Rodgers was given increases in job responsibility, having started out as a Caseload Probation Officer and later being given the increased responsibilities of an Intensive Probation Supervision Officer.

15.     As an Intensive Probation Supervision Officer, Ms. Rodgers supervises probationers who have been convicted of some of the most serious felony charges in the Circuit Court of Cook County, Illinois and are under intensive scrutiny for the court.

16.     Ms. Rodgers enjoyed respect and admiration from her co-workers in the Cook County Adult Probation Department.

17.     Cook County Adult Probation Officers, many of whom have many years of loyal and faithful service to and have labored long and hard in support of the Cook County Criminal Judicial System, perform their dedicated service often at great risk to their own personal safety.

### B. Plaintiff's Job Responsibilities

18.     Plaintiff's job as an Intensive Probation Supervision Officer for the Adult Probation Department of Cook County included, but was not limited to:

a. Supervision of probationers who had curfews requiring them to be in the house from 7 PM to 7 AM each day;

5

b. At least twice per week, make unannounced visits to the homes of probationers to make sure they are complying with the court ordered curfews;

c. At least once per week, meet with the probationers in the Office of the Cook County Adult Probation Department to assess the probationers' compliance with the terms and conditions of the court ordered intensive probation;

d. For those probationers on intensive drug probation, at least once per month perform a urine test of the probationers to ensure that they have remained drug-free;

e. For those probationers ordered to psychiatric or psychological counseling or ordered to do community service, confirm that the probationers are in compliance with that court order;

f. Prepare and forward written reports for and to the judges of the Circuit Court of Cook County advising concerning the progress of their probationers while on probation; and

g. If required, personally appear before the judge to advise concerning the progress of the probationer.

### C. Ms. Rodgers Meets the Legitimate Expectations of Her Employer

19.      Until the occurrence of the events specifically referred to hereinafter, Ms. Rodgers always met the legitimate expectations of her employer and its command staff and supervisory staff of the Cook County Adult Probation Department.

### D. Ms. Rodgers Receives Retaliation from Her Command for Exercise of Her Rights under FMLA

20.      Despite the fact that Ms. Rodgers was on leave pursuant to the FMLA approved by her doctor and the Cook County Adult Probation Human Resources Department, Plaintiff was called into an "Investigatory Meeting" on November 4, 2015 via email.

21.     The email indicated that Ms. Rodgers would need union representation at the Investigatory Meeting.

22.     The email further indicated that the Investigatory Meeting would concern the Darrien Gunn case.

23.     Ms. Rodgers was being accused of having improperly closed out the case of Darrien Gunn, a probationer assigned to her.

24.     When Ms. Rodgers prepared the case for closing due to the death of Darrien Gunn, she followed the same procedures as she had followed in the past.

25.     Present at the Investigatory Meeting on November 4, 2015 were Deputy Chief Probation Officer Phil Loizon, Intensive Drug Supervisor Mary Kennedy, Intensive Probation Supervisor James Brannigan, Union Representative/Intensive Probation Officer Nateba Montgomery, and Ms. Rodgers.

26.     At the very start of the meeting, Deputy Chief Probation Officer Phil Loizon said in a very loud and intimidating voice to Ms. Rodgers:

> I don't care about your FMLA. I don't care if you are on FMLA. You have to come to work. You still have work to do. Where else can you make $80,000 a year without coming to work and without doing any paperwork?
>
> If you want to be lazy, this unit is not the unit for you. Go to Caseload. This unit is about immediacy!

27.     The manner in which Deputy Chief Probation Officer Phil Loizon was addressing Plaintiff in the presence of other probation officers was demeaning and insulting, particularly in light of the reasons requiring Ms. Rodgers to exert her rights under FMLA.

28.     Ms. Rodgers felt intimidated and ambushed because she thought that, as she had been advised, the Investigatory Meeting was to discuss her closing of the Darrien Gunn case.

29.     After the initial unexpected outburst by Deputy Chief Loizon which she found completely upsetting and unwarranted, Plaintiff was ready to leave the meeting.

30.     Suddenly, Deputy Chief Loizon unexpectedly inquired of Ms. Rodgers: "Why are you here?"

31.     Ms. Rodgers indicated that she had come to the Investigatory Meeting to discuss the closing of the Darrien Gunn case

32.     Then Deputy Chief Loizon accused Ms. Rodgers of turning in the paperwork closing the case late, and Ms. Rodgers promptly protested that the case had not been turned in late.

33.     Ms. Rodgers explained that she had to wait for a copy of the Death Certificate of Darrien Gunn before she could properly close the case.

35.     Following the procedure that she had been using for years, once Ms. Rodgers received the Death Certificate for the probationer, she closed the case.

36.     Ms. Rodgers pointed out that as soon as she obtained the Death Certificate for the probationer, she wrote a request for a case closing in the Circuit Court of Cook County, Illinois.

37.     Deputy Chief Loizon accusatorily stated that the Circuit Court Judge had already closed the case of Darrien Gunn by the time the report and request to close the case were forwarded from Ms. Rodgers.

38.     Ms. Rodgers defended herself at this Investigatory Meeting indicating that she followed the appropriate procedure and did what she was supposed to do, as her paperwork was sent to her supervisor for final approval.

39.     Ms. Rodgers explained that only after final approval had been received from her supervisor was the paperwork typed up, and a hearing scheduled before the Judge.

40.     Ms. Rodgers contended that she should not be held responsible for anything that would be done in court thereafter if the judge had obtained a Death Certificate from some other source of which she was unaware and then closed the case on his own before she had obtained the appropriate documentation to make that request.

41.     Immediately thereafter, the Investigatory Meeting turned into an attack of Ms. Rodgers management of her entire caseload.

42.     Deputy Chief Loizon directed the attendees at the Investigatory Meeting to look at the Patricia Akins case.

43.     Deputy Chief Loizon wanted to know why Ms. Rodgers had not closed the Akins case in July 2015.

44.     Neither Deputy Chief Loizon nor any other attendee at the meeting had brought the entire printing of the Patricia Akins case with them because that had not been the stated purpose of the Investigatory Meeting.

45.     Without the file in front of her, Ms. Rodgers indicated that she was not prepared to speak with authority concerning the Patricia Akins matter.

46.     Ms. Rodgers postulated and defended herself stating that maybe she had not been in the office for most of the month of July or maybe even probationer Patricia Akins had been in jail.

47.     Deputy Chief Loizon next brought up the David Abrams case, stating:

> Abrams committed murder, and there has been nothing
> written on the case. Can you imagine now that would look
> to the public?

48.     Knowing full well what he was doing, Deputy Chief Loizon made this assertion to falsely accuse Ms. Rodgers of failing to document such a serious charge in the file.

49.     Ms. Rodgers and other attendees at the meeting became upset in the face of the accusation made by Deputy Chief Loizon as they had no knowledge that David Abrams had been charged with a new murder.

50.     As a matter of fact, the murder about which Deputy Chief Loizon was speaking had previously occurred and David Abrams had been convicted years earlier and the probationer had already served his time on that case.

51.     David Abrams had been given probation on 10/8/15, and Ms. Rodgers met with him very shortly after he was given intensive probation by the court.

52.     Because his case had not yet been initiated into the Cook County Adult Probation Department computer system, Ms. Rodgers made handwritten notes to the file of the information she gathered concerning David Abrams at his initial interview.

53.     The paperwork concerning David Abrams was not even completed by the staff and placed in the computer system until 10/20/15 when Ms. Rodgers would finally be able to enter her handwritten notes into the computer.

54.     Ms. Rodgers explained that in late October 2015 she was on approved FMLA leave, was having very serious problems at home in caring for her ailing mother, and could not update the computer system on the David Abrams case.

55.     Only after the David Abrams case had been entered into the computer system of the Cook County Adult Probation and Ms. Rodgers returned from FMLA leave could she update her handwritten notes into the computer system.

56.     Ms. Rodgers protested to Deputy Chief Loizon that if she had known the Investigatory Meeting was going to concern her entire caseload, she would have been prepared to speak on each case.

57.     Then Deputy Chief Loizon and Intensive Drug Probation Supervisor Mary Kennedy directed Ms. Rodgers attention to a memo written in 2013 requiring her to run court checks on all probationers.

58.     Intensive Drug Probation Supervisor Mary Kennedy heatedly asserted that the 2013 memo required all Intensive Supervision Probation Officer to always

runs ICLEAR checks, CRT checks, and LEADS checks during every contact with probationers assigned to her.

59.     Ms. Rodgers defended that she never did receive and had no knowledge of the 2013 memo to which her attention was then being directed and therefore could not be expected to follow it.

60.     Deputy Chief Loizon and Intensive Drug Probation Supervisor Mary Kennedy in raised and accusatorial voices insisted that "everyone got the memo".

61.     Ms. Rodgers contended that as far as she knew no Intensive Supervision Probation Officer was ever following such a direction or told her that they even knew of it.

62.     Ms. Rodgers asked why the 2013 memo had not been brought up for over two years if it was perceived that Ms. Rodgers was not following it all that time.

63.     Union Representative Montgomery added that she had never seen the memo either.

64.     Intensive Drug Probation Supervisor Mary Kennedy indicated that she had a copy of the memo on their desk at that very moment and would get a copy for Ms. Rodgers after the Investigatory Meeting.

65.     As the Investigatory Meeting was concluding, Deputy Chief Loizon stated that Ms. Rodgers had to bring her "negligent caseload" up to standards.

66.     Deputy Chief Loizon added that he doubted that she could do so, but he would give Ms. Rodgers "a month to try".

67.     In a calmer but still intimidating voice, Deputy Chief Loizon asked Ms. Rodgers two times if she understood.

68.     To both inquiries, Ms. Rodgers indicated that she did not understand because her caseload was up to standards and was not negligent in any fashion.

69.     Plaintiff felt completely badgered, ambushed, and unfairly intimidated and threatened by the actions of Deputy Chief Loizon and Intensive Drug Probation Supervisor Mary Kennedy at the Investigatory Meeting.

70. Deputy Chief Probation Officer Loizon had long had a reputation among Cook County Adult Probation Officers of intimidating and unfairly accusing and disciplining them.

71.     After the Investigatory Meeting had concluded, Intensive Drug Probation Supervisor Mary Kennedy told Ms. Rodgers and Union Representative Montgomery that, if they would accompany her to her office, she would provide them with a copy of the memo.

72.     Ms. Rodgers and Union Representative Montgomery declined the offer, indicating that they would look for the memo on their own.

**F. Ms. Rodgers Is Granted Different Union Representation**

73.     Feelings sorry that Union Representative Montgomery had been caught up in this situation because she also worked for the same supervisors and in the same department as Plaintiff, immediately after the meeting Ms. Rodgers wrote Union President James Dunaway and requested that henceforward she be assigned Union Steward Claudia Martin to represent her in any meetings with Defendants.

74. The request from Ms. Rodgers was fulfilled, and Union Steward Claudia Martin was assigned to represent her in all future matters.

### G. Ms. Rodgers Call to Further Investigatory Meetings

75. After several starts and stops, Ms. Rodgers was called down to the Administrative Offices of the Cook County Adult Probation Department for another Investigatory Meeting on February 23, 2016.

76. In attendance at that meeting was Deputy Chief Loizon, Intensive Drug Probation Supervisor Mary Kennedy, Union Steward Claudia Martin, and Plaintiff as Human Resources Director Noreen Larson would step in and out of the meeting periodically.

77. The Investigatory Meeting had been scheduled to discuss the Plaintiff's handling of the Corey Thomas case.

78. Deputy Chief Loizon and Intensive Drug Probation Supervisor Mary Kennedy announced that Ms. Rodgers would be written up because she had not followed the dictates of the 2013 memorandum.

79. Ms. Rodgers became emotionally upset because she had never been disciplined or written up before as a Cook County Adult Probation Officer.

80. When Ms. Rodgers was finally able to compose herself, Deputy Chief Loizon started to bring up additional matters about which they were considering discipline of Ms. Rodgers.

81.     Union Steward Claudia Martin indicated that any additional matters could only be discussed in a separate meeting because no notice of additional charges had ever been tendered to Ms. Rodgers for which she could prepare.

82.     When Deputy Chief Loizon insisted that he was going to discuss additional issues with Ms. Rodgers, Union Steward Claudia Martin stepped out of the room.

83.     As Plaintiff was now alone in the room without union representation, Deputy Chief Loizon proudly announced while simultaneously continually pointing and shaking his finger at Ms. Rodgers:

> We have you now! You got the judge angry because you did not follow his order to change the community service site for your probationer. Now, Assistant Chief Matt Sobieski is involved. I am going to get you for that!

84.     Although it appeared that the participants at the meeting would not listen to anything she had to say in her defense, Ms. Rodgers told them that she had changed the community service site for the probationer as ordered by the judge, had advised her supervisor of that fact, and had gone to court to advise the judge that the probationer had misstated her failure to complete the site change.

85.     The judge believed the assertion by Ms. Rodgers, confronted the probationer about why he had indicated otherwise, apologized to Ms. Rodgers, and excused her from the court proceedings.

86.     While she was obviously emotionally upset during this portion of the meeting, Deputy Chief Loizon continued pointing and shaking his finger at Ms. Rodgers as he promised:

> I also know that Judge Lenihan in Bridgeview is angry
> about something you did. I don't know what it is yet, but
> when I find out what that is all about, I'm going to get you
> for that too!

87.     With that Ms. Rodgers broke down and the meeting was adjourned.

## H. Deputy Chief Loizon Is Placed on Administrative Leave Only to Be Later Terminated

88.     Shortly after his last meeting with Ms. Rodgers on February 23, 2016, Deputy Chief Loizon was placed on administrative leave for various widely publicized transgressions and official misconduct.

89.     As the press coverage concerning the transgressions of Deputy Chief Loizon intensified, his employment with the Cook County Adult Probation Department was terminated.

## I. Ms. Rodgers Assured That All Problems Had Been Resolved

90.     In March 2016, Chief Probation Officer Lavon Haywood came out to the Sixth District Courthouse in Markham Illinois and met with Ms. Rodgers.

91.     Chief Probation Officer Lavon Haywood said to Ms. Rodgers, "It's over with!"

92.     As she fought back tears, Ms. Rodgers inquired further of Chief Probation Officer Lavon Haywood, "Are you sure? This has been going on with Loizon for a long time."

93.     Chief Probation Officer Lavon Haywood again assured Ms. Rodgers, "It's over with!"

## I. Ms. Rodgers Disciplined for the First Time in Her Career

94.     On May 17, 2016, Plaintiff and Union Steward Claudia Martin were summoned to the Cook County Criminal Courts Building to a meeting presided over by Assistant Chief Probation Officer Matthew Sobieski and Deputy Chief Probation Officer Valerie Starling.

95.     At the meeting, it soon became apparent that contrary to the assurances she had received in March from Chief Probation Officer Lavon Haywood, Assistant Chief Sobieski was planning to discipline her.

96.     Assistant Chief Sobieski would not listen to anything that Ms. Rodgers or Union Steward Claudia Martin had to say, but only indicated:

> This is it. This is already written. I really don't want to hear anything else. Anything you have to say will have to be considered in a grievance from the union.

97.     After that statement, Assistant Chief Sobieski presented Ms. Rodgers with a Circuit Court of Cook County Disciplinary Action Form.

98.     The Circuit Court of Cook County Disciplinary Action Form indicated that Ms. Rodgers had failed to comply with the 2013 memo in relation to the Corey Thomas case.

99.     This was the first time in her career that Ms. Rodgers had ever received discipline.

100.    Ms. Rodgers was never provided an opportunity by Assistant Chief Sobieski to defend herself at that meeting.

101.    Assistant Chief Sobieski had never discussed any allegations concerning wrongdoing by Ms. Rodgers with her or her union representative before the discipline was imposed.

102.    The meeting was extremely short, and Ms. Rodgers was summarily dismissed from the Probation Office while she was obviously emotionally distraught.

### J. Ms. Rodgers Notifies Command of Harassment in the Workplace, But Her Complaints Are Ignored

103.    Having been disciplined for not completing work while on approved FMLA and having been retaliated against for exercising her rights under the FMLA, plaintiff protested to members of her command.

104.    Carla Rodgers filed grievances with her union, but still no corrective action was taken the illegal discipline against her was allowed to stand.

105.    After her many years of loyal service, Carla Rodgers could only be formally disciplined as a Probation Officer with the advice and consent of Chief Judge Timothy Evans who directed the activities of the Cook County Adult Probation Department.

### K. Ms. Rodgers Files a Charge of Discrimination Based on the Hostility and Retaliation She Experiences in the Workplace

106.    On June 14, 2016 Carla Rodgers filed a Charge of Discrimination with the Illinois Department of Human Rights charging that she had been subjected to sexual harassment in the workplace because she had been constantly called into Investigatory Meetings and Pre-Disciplinary Meetings by Deputy Chief Loizon

accusing her of poor job performance. (A copy of the Charge of Discrimination was attached to her original complaint and made a part thereof as Exhibit "A").

### L. Ms. Rodgers Given a Right to Sue

107.    On April 13, 2017, Plaintiff was given a Right to File a Complaint by the Illinois Department of Human Rights in the Circuit Court of Cook County (A copy of the Right to Sue Letter from the Illinois Department of Human Rights was attached to and made a part of Plaintiff's original Complaint in this cause as Exhibit "B").

108.    Appreciating that the Illinois Department of Human Rights and the Equal Employment Opportunity Commission have concurrent jurisdiction over claims initiated under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended, still the Illinois Department of Human Rights did not authorize the filing of suit in this Federal District Court.

109.    A similar authorization of right to sue had not yet been received from the Equal Employment Opportunity Commission at the time of filing of Plaintiff's original Complaint.

110.    Out of an abundance of caution, since the right to sue received from the Illinois Department of Human Rights authorized the filing of suit by July 15, 2017, plaintiff filed her original Complaint in the Above-Captioned Litigation.

111.    Upon receipt of the Right to Sue Letter from the Equal Employment Opportunity Commission, pursuant to Fed.R.Civ.P. 15(a), Ms. Rodgers sought leave to file this Second Amended Complaint to include such letter according to the

holdings in *Gibson v. Kroger Co.*, 506 F.2d 647, 652-53 (7th Cir. 1974) and *Fields v. Village of Skokie*, 89 F.R.D. 576, 578 (NDIL 1981). (A copy of the Right to Sue Letter from the Equal Employment Opportunity Commission is attached hereto and made a part hereof as Plaintiff's Exhibit "1").

## COUNT I

**PLAINTIFF SEEKS RECOVERY FROM HER EMPLOYER, COOK COUNTY AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY FOR HOSTILE WORK ENVIRONMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII of the CIVIL RIGHTS ACT of 1964**

112. Plaintiff realleges and incorporates the foregoing paragraph 1 through paragraph 111 of this Complaint as paragraphs 1 through 111 of this Count I as though fully set forth at this place.

113. Plaintiff is qualified for the job she holds as a Probation Officer for the Cook County Adult Probation Department and performs all job functions to Defendants' legitimate employment expectations.

114. Despite Plaintiff's qualifications and job performance, Defendants discriminate and retaliate against her claiming that she was not performing her job satisfactorily after she exercised her rights to FMLA leave.

115. Defendants' discrimination and retaliation against Plaintiff and denial of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., as amended is intentional.

116.    Plaintiff's employers, Defendants Chief Judge Timothy Evans and Cook County discriminate against Plaintiff in the terms and conditions of her employment.

117.    Plaintiff's employers, Defendants Chief Judge Timothy Evans and Cook County continue to show reckless indifference to the intentional violations of plaintiff's rights under title VII by the Individually-Named Defendants of the Cook County Adult Probation Department being sued in their individual capacity.

118.    Although often requested to do so and alerted to the violation of her rights that has been long occurring, Plaintiff's employers, Defendants Chief Judge Timothy Evans and Cook County have failed to take any corrective action in this matter whatsoever to avoid harm to Ms. Rodgers or punish the wrongdoers.

119.    Similarly situated male employees who do not complete assignments while on approved leaves from the workplace are not subjected to the same terms and conditions of employment as the Plaintiff.

120.    The reasons for the harassment and retaliation of plaintiff given by the individually named defendants in this cause being sued in their individual capacity are false and merely pretext for illegal discrimination.

121.    The reasons for Plaintiff's suspension given by the individually named defendants in this cause being sued in their individual capacity are false and merely pretext for illegal discrimination.

122.    Plaintiff's employers, Defendants Chief Judge Timothy Evans and Cook County could have opposed and stopped the formal discipline of Ms. Rodgers,

but instead ratified and approved the discriminatory action taken by the Individually Named Defendants being sued in their individual capacity against her.

123. The actions taken by Plaintiff's Employers, as described above, are in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., as amended in that Defendant employers acted to discriminate and retaliate against Plaintiff in the terms and conditions of her employment because she did not complete work assignments while off on approved leave under the FMLA.

124. Defendants showed a reckless indifference to Plaintiff's well-known rights under title VII of the Civil Rights Act of 1964, 42 U. S. C. §§ 2000e et seq., as amended, and the violation of those rights without any repercussion whatsoever to those who intentionally violated those rights.

125. As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages when suspended and has suffered the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

126. As the employer, Cook County is vicariously liable under Title VII for the unlawful harassment of Carla Rodgers by the individually named defendants being sued in their individual capacity who have been empowered by Cook County to take tangible employment actions against her.

WHEREFORE, Plaintiff Carla Rodgers requests the following relief against her employer, Cook County, Illinois and the Office of the Chief Judge of Cook County:

A.     That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.     That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

C.     That the Court grant such other and further relief as the Court may deem just or equitable.

## COUNT II

### PLAINTIFF SEEKS RECOVERY FROM HER EMPLOYER, COOK COUNTY AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY FOR RETALIATION IN VIOLATION OF TITLE VII

127.     Plaintiff realleges and incorporates the foregoing paragraph 1 through 126 of this Complaint as paragraphs 1 through 126 of this Count II as though fully set forth at this place.

128.     Plaintiff met her employer's legitimate employment expectations.

129.     Plaintiff engaged in protected activity when she reported the harassment and violations of Title VII to the Defendants.

130.     On June 14, 2016, Plaintiff filed a Charge of Discrimination and Harassment against Defendants with the Illinois Department of Human Rights.

131.     After engaging in said protected activity, Defendants have engaged in many acts of retaliatory actions which include, but are not limited to, conspiring among its Supervisors, Human Resources Representatives, and Upper Management to deprive plaintiff of rights, benefits and protections guaranteed to her under the law, unfairly disciplining and writing up

23

Plaintiff although she was performing to her employer's legitimate expectations and could continue to perform her job, transferring her to the criminal courts building located at 26th St. and California Avenue in Chicago from the Sixth District Courthouse in Markham to which she had been assigned for over 17 years in order to increase the inconvenience and concern of Carla Rodgers knowing full well that was only moments from her home to which he could be called at any moment to render emergency medical care for her mother, six and otherwise harassing Plaintiff in various ways designed to deprive her of those rights, benefits, and protections to which she was entitled and to impede her ability to work for the Cook County Adult Probation Department.

132.   There is a causal connection between Plaintiff's protected activity and the retaliatory actions her employers have recklessly allowed to go unchecked and have even affirmed such discriminatory practices although plaintiff has served notice to her employers of those unlawful actions and practices by the Defendants being sued in their individual capacity.

133.   Similarly situated employees who did not engage in protected activity were treated more favorably than Plaintiff.

134.   The reason for disciplining Plaintiff is false and the reason given for changing and her workplace is merely pretext for illegal retaliation and was motivated by Defendants' animus towards her.

135.   Plaintiff's employers, Cook County Illinois and the person who directs the Cook County Adult Probation Department, Chief Judge Evans granted approval for the for the illegal and unwarranted discipline Plaintiff as a Probation Officer and the pretextual change of the location of her work assignment.

136.    The actions by the Defendants being sued in their individual capacity, as described above, are in violation of Title VII as they have engaged in acts of retaliation because of Plaintiff's engagement in protected activities.

137.    To recklessly allow the above-mentioned discriminatory practices to continue unabated, although often requested to take corrective action, shows reckless indifference to Plaintiff's rights under Title VII by her employers, Chief Judge Evans and Cook County Illinois.

138.    As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages when suspended and the indignity of discrimination which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, Carla Rodgers requests the following relief against her employer, Cook County, Illinois and the Office of the Chief Judge of Cook County:

A.    That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.    That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

C.    That the Court grant such other and further relief as the Court may deem just or equitable.

## COUNT III

## PLAINTIFF SEEKS RECOVERY FROM HER EMPLOYER, COOK COUNTY AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY AND ALL DEFENDANTS BEING SUED IN THEIR INDIVIDUAL CAPACITY FOR RETALIATION FOR EXERCISING RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT (FMLA)

139.    Plaintiff repeats and realleges Paragraphs 1 through 138 of this Complaint as Paragraph 1 through 138 of Count III as though fully set forth herein.

140.    Interference with Plaintiff's exercise of her rights under the Family Medical Leave Act was a motivating factor in the retaliatory actions taken by the Individually Named Defendants towards her.

141.    None of the Defendants ever did attempt a "meaningful review" of Plaintiff's complaints to them, did not attempt to constrain the actions of other Defendants being sued in their individual capacity, and "granted authority" to them to continue their threats, harassment, and retaliation of her in her employment as a Cook County Probation Officer.

142.    Defendants engaged in a pattern and practice of retaliation against employees of the Cook County Adult Probation Department.

143.    Defendants have knowledge of the complained of conduct and refuse and have failed to take action to terminate or correct such conduct, leading to an inference that such custom, policy, or practice must exist.

144.    Plaintiff's exercise of protected rights under FMLA and her use of intermittent and pre-approved leave was a substantial or motivating factor in the adverse employment discipline taken against her by all the Defendants being sued

in their individual capacity who bore animus towards her.

145.    The actions were taken against Plaintiff by her employer, Cook County and all the Defendants being sued in their individual capacity under the color of law because they bore animus towards her.

146.    The actions taken by her employer, Cook County and all the Defendants being sued in their individual capacity under the color of law were done with animus towards Plaintiff's exercise of protected rights under FMLA and her use of intermittent and approved leave.

147.    Plaintiff's exercise of protected rights under FMLA and her use of intermittent and approved leave were at least a motivating factor in the decision by her employer, Cook County and all the Defendants being sued in their individual capacity to take retaliatory action against her.

148.    As a direct and proximate result of Defendants' retaliatory conduct, acting under the color of law and depriving plaintiff of her rights secured under the Family and Medical Leave Act, Plaintiff suffered injury, including suspension during her employment, damage to her reputation, great emotional distress, and grave financial losses due to the suspension of her employment.

149.    Pursuant to his authority, Plaintiff's employer and the person who directs the Cook County Adult Probation Department, Chief Judge Evans granted approval for the transfer, reassignment, and relocation of Plaintiff as a Probation Officer.

150.    Plaintiff has suffered and continues to suffer from severe emotional distress from the injuries caused to her by the violation of her constitutional rights and suspension from her employment as set forth above.

WHEREFORE, Plaintiff Carla Rodgers respectfully prays for judgment against her employer, Cook County, Illinois, and the Office of the Chief Judge of Cook County, and all the Defendants being sued in their individual capacity, jointly and severally:

A.    That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.    That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial from only the Defendants being sued in their individual capacity, jointly and severally;

C.    That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

D.    That the Court grant such other and further relief as the Court may deem just or equitable.

## COUNT IV

**PLAINTIFF SEEKS RECOVERY FROM HER EMPLOYER, COOK COUNTY AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY AND ALL DEFENDANTS BEING SUED IN THEIR INDIVIDUAL CAPACITY INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

151.    Plaintiff repeats and re-alleges paragraphs 1 through 150 of this Complaint as paragraphs 1 through 150 of this Count IV as though fully set forth herein.

152.    Having been repeatedly advised of the rights of Plaintiff and knowing full well of the concern and inconvenience it would cause plaintiff by the relocation of her work assignment after 17 years and inhibit her ability to attend to any emergency concerns for the health of her mother for which she had been granted intermittent FMLA, the actions of Defendants were extreme and outrageous.

153.    The actions of the Defendants were done intentionally and maliciously to cause severe emotional distress to Plaintiff.

154.    Defendants knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to Plaintiff.

155.    The actions of Defendants were intentional and malicious and demonstrated a willful and wanton disregard for the rights of Plaintiff and had a high probability of causing severe emotional distress to her.

156.  Plaintiff has suffered and continues to suffer from severe emotional distress.

WHEREFORE, Plaintiff Carla Rodgers respectfully prays this Honorable Court to grant the following relief against her employer, Cook County, Illinois, and the Office of the Chief Judge of Cook County, and all the Defendants being sued in their individual capacity, jointly and severally:

A.    Compensatory damages against each Defendant in an amount in excess of $1,000,000.00;

B.    That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial from only the Defendants being sued in their individual capacity, jointly and severally;

C.     Reasonable attorney's fees and costs of this suit; and

D.     Such other relief as this Honorable Court deems just and appropriate.

### COUNT V
### *MONELL* CLAIM AGAINST COOK COUNTY, ILLINOIS
### AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY

157.    The Plaintiff repeats and re-alleges paragraphs 1 through 156 of this Complaint as paragraphs 1 through 156 of this Count V as though fully set forth herein.

158.    Chief Judge Evans, Plaintiff's employer and the person who directs the Cook County Adult Probation Department, pursuant to his authority, granted approval for the illegal and unjustified discipline of Plaintiff as a Probation Officer.

159.    There is a widespread practice in Cook County, Illinois to compel absolute compliance by its Probation Officers with dictates from the Individually Named Defendants in this cause lest the Probation Officers, no matter how blameless and/or senior in their positions, be subjected to unwarranted discipline, suspension, and/or termination.

160.    This practice is so permanent and well-settled that it constitutes a policy and usage with the force of law.

161.    Many of the most senior employees of the Cook County Adult Probation Department, seeing what is occurring, are frozen with fear of retaliation by members of their command.

162.    The wrongdoing by Defendants described throughout this First Amended Complaint has been pervasive and has long been feared by employees of the Cook County Adult Probation Department.

163.    Having had it called to his attention, Chief Judge Evans is well aware of this practice of subjecting senior employees of the Cook County Adult Probation Department to unwarranted discipline, suspension, and/or termination in violation of their constitutional rights and/or the most mundane of reasons.

164.    Having had this matter called to the attention of Chief Judge Evans, there still remains in the Cook County Adult Probation Department (1) the lack of constraints by policies made by others; (2) lack of "meaningful review"; and (3) a "grant of authority" to defendants to make the policy decision.

165.    Chief Judge Evans has final policymaking authority in Cook County, Illinois regarding the Cook County Adult Probation Department.

WHEREFORE, Plaintiff Carla Rodgers respectfully prays this Honorable Court to grant the following relief against Cook County, Illinois and the Office of the Chief Judge of Cook County:

A.    Compensatory damages against Defendant in an amount in excess of $1,000,000.00;

B.    Reasonable attorney's fees and costs of this suit; and

C.    Such other relief as this Honorable Court deems just and appropriate.

## COUNT VI

### STATE LAW CLAIM FOR INDEMNIFICATION
### AGAINST PLAINTIFF'S EMPLOYER, COOK COUNTY, ILLINOIS
### AND THE OFFICE OF THE CHIEF JUDGE OF COOK COUNTY

166.    The Plaintiff repeats and re-alleges paragraphs 1 through 165 of this Complaint as paragraphs 1 through 165 of this Count VI as though fully set forth herein.

167.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

168.    The Adult Probation Department Defendants were employees, members, and agents of the Circuit Court of Cook County and the County of Cook, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

169.    Cook County is obligated by Illinois statute to pay any judgment for compensatory damages entered against the Adult Probation Department Defendants or any of them.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to grant the following relief against Defendant Cook County, Illinois and the Office of the Chief Judge of Cook County:

A.    Compensatory damages against Defendants in the amount of $1,000,000.00;

B.    Reasonable attorney's fees and costs of this suit; and

C.     Such other relief as this Honorable Court deems just and appropriate.


Respectfully submitted,

/S/ John P. DeRose
John P. DeRose
One of Plaintiff's Lawyers


John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois  60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com